UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
  STONE & WEBSTER CONSTRUCTION,                              :
  INC.,                                                      :
                                                             :
                    Plaintiff,                               :
                                                             :   **ORDER UNDER RULE 16**
          -against-                                          :
                                                             :
  E-J ELECTRIC INSTALLATION                                  :
  COMPANY, ET AL.,                                           :
                                                             :   06-CV-5641 (BMC)(SMG)
                    Defendants.                              :
------------------------------------------------------------ X
                                                             :
E-J ELECTRIC INSTALLATION COMPANY,                           :
INC.,                                                        :
                    Third Party Plaintiff,                   :
                                                             :
          -against-                                          :
                                                             :
M.S.E. PPOWER SYSTEMS, INC.,                                 :
                                                             :
                    Third Party Defendant.                   :
------------------------------------------------------------ :
                                                             X
E-J ELECTRIC INSTALLATION COMPANY,                           :
INC., on behalf of the Class of New York Lien                :
Law Article 3A Beneficiaries,                                :
                                                             :
                                                             :   07-CV-2102 (BMC)(SMG)
                    Plaintiff,                               :
                                                             :
          -against-                                          :
                                                             :
STONE & WEBSTER CONSTRUCTION                                 :
CORP., ET AL.,                                               :
                                                             :
                    Defendants.                              :
------------------------------------------------------------ X

**COGAN**, District Judge.

Federal Rules of Civil Procedure 16(b) and (c) afford this Court broad discretion in prioritizing the issues in the case for discovery and trial. Pursuant to a suggestion by plaintiff

Stone & Webster Construction, Inc. ("SWC"), the Court has taken numerous submissions by the parties and heard argument on multiple occasions as to the most effective and equitable manner to structure discovery and trial. The parties had hoped to agree on a procedure among themselves, but they have not been successful, so the case will proceed as described below.

## BACKGROUND

This case is a rather complicated version of what would otherwise be a garden-variety contract dispute. SWC's parent corporation, Stone & Webster, Inc. ("SWI"), entered into a contract with Astoria Energy LLC to build an energy plant (the "facility") for Astoria. Astoria's customer for the power to be produced at the facility is Consolidated Edison Company of New York, and the facility required the design and construction of a means to get power from Astoria to Con Ed. This transmission mechanism is referred to as the Interconnection. SWI subcontracted with SWC to perform some or all of the work on the Interconnection; SWC, in turn, subcontracted with defendant E-J Electric Installation Company, Inc. to design and build the Interconnection, among other things.

Con Ed and Astoria rejected the Interconnection as designed and built by E-J. It is not clear at this stage why, but one can assume that the companies did not believe the work was in accordance with the specifications under the parties' various contracts. SWC rebuilt the Interconnection itself, remodeling it twice.

SWC then filed a complaint in Texas state court against E-J (known in Texas practice as a "petition"), which E-J removed and then had transferred to this Court under 28 U.S.C. §1404(a) or §1406. SWC ultimately amended its complaint in this Court against E-J, asserting three claims. The first is for breach of contract for defective performance and makes very general allegations of incomplete work, delayed work, faulty work, and overbilling. The claim

also alleges a breach based on E-J's refusal to reconfigure the Interconnection. The second claim is essentially a claim for contribution or indemnification, alleging that if, and SWC is careful to say if, the Interconnection was in fact defectively designed or constructed, then E-J is responsible for anything that SWC has to pay to Astoria, including costs of defense. The third count is against Travelers, which issued E-J's performance and payment bonds for the project, seeking payment under that bond.

E-J's answer denies that it did anything wrong in performing the contract with SWC, and counterclaims that it has a lien on the real property where the facility is located as a result in underpayment for its work, on which it would like to foreclose. Its first counterclaim seeks foreclosure of this lien, which SWC has bonded through its bonding company, defendant National Union. Its second counterclaim seeks recovery of just under $8 million, the amount it says it is owed. Its third counterclaim seeks damages for a portion of SWC's alleged cost savings, pursuant to a sharing clause in its contract with SWC, which comes to about $4.5 million.

E-J's answer raised a few other interesting issues. First, because E-J is seeking foreclosure on its lien, it named as additional defendants all of the other subcontractors who might have liens on the property. There are at least six of them; from the docket, it does not appear that E-J has served them, but two of them, Alstom Power and Durr Mechanical, have entered appearances or made themselves involved in the proceedings. Second, E-J has joined SWI, apparently on an agency theory, as principal of SWC. Third, E-J has impleaded M.S.E. Power Systems, Inc., alleging that M.S.E. had a subcontract with E-J to work on the Interconnection, and if E-J is found liable to SWC, then M.S.E bears responsibility.

One of the inherently complicating factors in structuring this litigation is that some of the subcontractors have arbitration clauses in their contracts, and some do not. SWI has an arbitration clause in its contract with Astoria; the parties have been engaging in discussions, but if a formal arbitration proceeding has commenced, the parties have not advised me of it. SWC and E-J of course have no arbitration clause, but Durr has one in its subcontract with SWC. Alstom Power has an arbitration clause both in its subcontract with SWC and in a separate contract with SWI. Durr and Alstom have filed liens for amounts they claim are owing; both are insistent on preserving their arbitration rights and liens. Significantly, however, the work that Durr and Alstom have done appears to be unrelated to the Interconnection.

As the Court was considering how to structure this matter, E-J complicated it further (which is not to suggest that E-J did anything wrong, although I have some doubts about the particular procedure it chose) by commencing a new action against SWI, SWC, and two members of the SNC-Lavalin Group (referred to herein as SNC-Lavalin). This complaint is brought as a class action on behalf of all subcontractors (presumably, the same contractors who E-J joined in the first action) pursuant to Article 3-A of the New York Lien Law. It alleges that instead of paying subcontractors like it is supposed to, SWC and SWI (who are treated as one for purposes of this pleading), paid or may pay a portion of the proceeds they receive from Astoria to SNC-Lavalin, as a fee for SNC-Lavalin's issuance of performance guarantees in favor of SWI/SWC to Astoria. SWI and SWC may do or have done this by creating a "Project Account" into which Astoria made all progress payments; from that account, all of subcontractors' payments, guarantee fees, and SWI/SWC profits were or may be paid out. SNC-Lavalin is alleged to have a first lien on this Project Account, and E-J's complaint implies that in the event of an SWI or SWC default, SNC-Lavalin takes over from SWI/SWC as trustee. The crux of the

4

argument is that since all subcontractors have to paid first, and E-J and other contractors have not been fully paid, SWI/SWC have breached their fiduciary duty to those subcontractors, or may do so, by paying profits to themselves or guarantee fees to SNC-Lavalin.

**DISCUSSION**

The dispositive issue in these cases is whether E-J properly performed its contract with SWC and therefore is entitled to be paid more money, or whether, instead, SWC legitimately did not pay E-J because E-J's performance was deficient. A closely related issue is whether, if E-J's performance was not in compliance with the contract, M.S.E. is liable for that breach. I believe resolution of those issues, what I will refer to below as the "performance issues," will likely resolve all remaining issues, either legally, or as a practical matter because any remaining issues will likely settle. I see no reason to involve multiple additional parties in protracted discovery on collateral issues when a resolution between SWC, E-J, and M.S.E. will likely be determinative.

I have carefully considered E-J's claim that this procedure will prejudice it, and I find that position unconvincing. The main objection E-J raises is that it may lose security for its trust or lien claims if the performance issues are tried first because SWC and SWI may resolve their claims with Astoria, either by settlement or arbitration. Particularly, E-J, without conceding the fact, asserts that an SWI-SWC/Astoria resolution may extinguish its lien claims, or may dissipate the Project Fund against which it could proceed on its trust claims. If that is a risk – and I do not consider it firmly established as one under the case law since E-J has not assigned or consented to SWC acting as its agent under its contract, compare C.B. Strain & Son, Inc. v. J. Baranello & Sons, 90 A.D.2d 924, 457 N.Y.S.2d 925 (3d Dep't 1982) – my structuring of this case will not increase it. SWI and SWC have been free to resolve their issues with Astoria at any time and may do so no matter how we might proceed in this litigation. Moreover, to the extent that SWI

5

and SWC are acting as trustees with respect to E-J's lien and trust claims, as E-J alleges (a matter that I am not deciding at this stage), any resolution or lack of diligent prosecution by SWI and SWC may expose it to a breach of fiduciary claim by E-J or other trust beneficiaries, and indeed SNC-Lavalin may also face exposure if it knowingly aids and abets such a breach of fiduciary duty.

For this reason, I am not persuaded by E-J's reference to the Durr contract, in which Durr agrees (1) to be bound by any resolution between the Owner and Contractor; and (2) to stay any litigation Durr might bring pending resolution of such a dispute. Although E-J is correct that it is not bound by a similar provision, it seems to me that this cuts the other way. If E-J has not agreed to be bound, then there is no prejudice to it from determining the performance issues first. Perhaps E-J's point is that it is, or at least may be, legally bound to the result notwithstanding the absence of a similar provision in its contract. However, if that is so, the Durr language is largely superfluous, and again, more importantly, that is an exposure that E-J faces no matter how this case is structured.

To further ensure, however, that E-J is not prejudiced by having the performance issues determined first, I am going to condition this Order on SWI and SWC's agreement to stay any arbitration or legally binding resolution of claims with Astoria, with of course appropriate tolls of any necessary deadlines. (It may commence such arbitration if necessary to preserve its rights but then it must agree with Astoria to stay it.) I recognize that Astoria is not a party to this action (although it will certainly be an important witness) and that SWI and SWC may not be able to assure Astoria's cooperation. But Astoria has been present as a "guest" at the proceedings in this case and it seems likely that it wants the performance issues resolved first, just as do SWI and

SWC. If, instead, it forces SWI or SWC to proceed with arbitration, then I may have to revisit the structuring of the case imposed by this Order.

Similarly, Durr, Alstom, and any other subcontractors that E-J has served are directed to take whatever action they deem necessary to preserve their arbitration rights, but to agree upon a stay of such arbitration with SWI and SWC pending the determination of the performance issues here. As Alstom has stated in its submission, this should be in all parties' interest as their clients will have a good chance of avoiding the substantial cost of arbitrating, participating in this action, or both.

Finally, although implicit in the above discussion, action number 07-cv-2102 is stayed pending further Order of this Court. There is a sufficient likelihood that resolution of the performance issues will also result in a resolution of that action to warrant a stay, and if it does not, there is no reason to believe that E-J will be prejudiced by a stay.

SWC, E-J and M.S.E. are directed to submit a case management plan within 14 days that provides for prompt exchange of documents and depositions on the performance issues only, and envisions the completion of fact discovery on those issues within 120 days of this Order. The parties are advised that while this Court recognizes the complexity of the performance issues, the action has been dormant for some time and the Court will not be inclined to extend this deadline absent a firm indication that the parties are diligently pursuing discovery.

**SO ORDERED.**

                                                  s/Brian M. Cogan
                                                             U.S.D.J.

Dated: Brooklyn, New York
       July 9, 2007